UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

PATRICK GUNTHER, individually
and as a representative of the Class,
      Plaintiff,

   v.                                                    Case No. 15-C-1461

DSW INC.,
      Defendant.
_____

## DECISION AND ORDER

Patrick Gunther has filed a complaint against the shoe retailer DSW, Inc., alleging that DSW violated the Fair Credit Reporting Act ("FCRA") by obtaining a consumer report about him for employment purposes without first providing him with a written disclosure that complies with the FCRA's requirements. *See* 15 U.S.C. § 1681b(b)(2)(A). Before me now are two motions to dismiss filed by DSW: one to dismiss the complaint for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and one to dismiss the action for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), on the ground that the plaintiff does not have Article III standing.

### I. BACKGROUND

The plaintiff alleges that, on February 25, 2015, he applied online for a part-time sales supervisor position at DSW's store in Mequon, Wisconsin. As part of the plaintiff's application process, he "was given" a form entitled "Disclosure and Authorization." Compl. ¶ 17. (The plaintiff does not explain how the form was given to him. But because he alleges that he applied online, I assume that he downloaded the form from the Internet as part of his online application.) This form stated, among other things, that

1

DSW "may obtain information about [the plaintiff] for employment purposes from a third party consumer reporting agency." Compl. Ex. 1. The form also contained an "acknowledgement and authorization" section, which asked the plaintiff to authorize DSW to obtain consumer reports about him. *Id.* The form had blanks for the plaintiff to fill in his personal information, including his social-security number, and also a signature line. On March 3, 2015, DSW procured a consumer report about the plaintiff from the consumer-reporting agency First Advantage. Although the plaintiff does not allege that he filled out and signed DSW's disclosure-and-authorization form, he does not allege that DSW obtained a credit report about him without first obtaining his written authorization, and thus I assume that he signed the form.[1]

The plaintiff alleges that DSW's obtaining the consumer report about him for employment purposes violated the FCRA, specifically 15 U.S.C. § 1681b(b)(2)(A), which provides in relevant part as follows:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> > (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> >
> > (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

The plaintiff alleges that DSW violated the this provision because the disclosure it made to him before obtaining a report about him was not "in a document that consists solely of

---

[1] In his brief in opposition to the defendant's motion, the plaintiff states that he "signed Defendant's disclosure and authorization form." Br. in Opp. at 4, ECF No. 34.

2

the disclosure." Rather, the plaintiff alleges that the disclosure was in a document that was three pages long, contained "extraneous information," and was attached to another form that required the plaintiff to list any criminal convictions. Compl. ¶¶ 18–25 & Ex. 1.

The plaintiff does not allege that he incurred any form of tangible harm as a result of DSW's alleged violation of the FCRA. However, he alleges that he "experienced a concrete injury in the form of being deprived of a disclosure to which he was statutorily entitled." Compl. ¶ 37. As relief for this alleged injury, the plaintiff seeks statutory damages of not less than $100 and not more than $1,000, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Further, the plaintiff seeks punitive damages under § 1681n(a)(2) and costs and attorneys' fees under § 1681n(a)(3). To obtain any of this relief, the plaintiff must prove that DSW's noncompliance with the FCRA was "willful." 15 U.S.C. § 1681n(a).

## II. DISCUSSION

I first address DSW's motion to dismiss for lack of standing. The jurisdiction of federal courts is limited to "Cases" and "Controversies" as described in Article III, Section 2 of the Constitution. *Diedrich v. Ocwen Loan Servicing, LLC*, __ F.3d __, 2016 WL 5852453, at *2 (7th Cir. 2016). There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to have standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 560–61.

DSW contends that the plaintiff has not suffered an injury in fact. An injury in fact occurs when the plaintiff experiences an invasion of a legally protected interest that is

3

(a) "concrete and particularized," and (b) actual or imminent, not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560. Recently, in *Spokeo, Inc. v. Robins*, the Court emphasized that "concrete" and "particularized" are distinct requirements. __ U.S. __, 136 S. Ct. 1540, 1545 (2016). In the present case, there is no question that the plaintiff's injury is "particularized," but DSW contends that it is not "concrete."

A "concrete" injury must be "*de facto* "; that is, it must actually exist. *Spokeo*, 136 S Ct. at 1548. "Concrete" is not, however, necessarily synonymous with "tangible," and "intangible injuries can nevertheless be concrete." *Id.* at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Thus, a court should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Further, because Congress has the power to define injuries, its judgment must be considered. *Id.* However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Thus, a person may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

In *Spokeo*, the Court offered several comments about the difference between a "bare procedural violation," which does not confer standing, and a procedural violation involving "concrete harm," which does. First, a procedural violation will involve concrete harm if it entails a "degree of risk" of real harm. *Id.* (stating that "the risk of real harm" may satisfy the concreteness requirement); *id.* at 1550 (instructing lower court to

determine whether alleged procedural violations "entail a degree of risk sufficient to meet the concreteness requirement"). By "risk of real harm," the Court meant the existence of a risk that the defendant's procedural violation has caused or will cause the plaintiff to suffer some harm apart from the procedural violation itself, but which may be difficult to prove or measure. *Id.* at 1549. This is evident from the court's citation to sections of the Restatement (First) of Torts pertaining to libel and slander per se. *See id.* In an action for libel per se, a person does not need to prove any specific harm from the libelous statement because the statement is deemed obviously harmful, yet the harm is difficult to measure. *See Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 268–69 (7th Cir. 1983). Moreover, the examples the Court gave in *Spokeo* of procedural violations that may result in no concrete harm involved scenarios in which a procedural violation occurred but there was no serious risk of the violation's causing the plaintiff to suffer other harm that may be difficult to prove or measure. 136 S. Ct. at 1550. The Court's examples involved violations of certain FCRA provisions designed to protect a consumer from harm caused by the dissemination of inaccurate information about him. *Id.* The Court noted that if a defendant violated one of these provisions but did not disclose any inaccurate information, or disclosed only inaccurate information that could not possibly result in harm to the plaintiff, such as an inaccurate zip code, then the plaintiff would not have suffered a concrete injury. *Id.* The Court's discussion of these examples implies that the Court would find that the plaintiff suffered a concrete injury if the defendant disseminated inaccurate information that carried a more substantial risk of harming the plaintiff, such as that the plaintiff was a convicted sex offender, even if the plaintiff could not plead or prove any specific instance in which a third party took an adverse action against the plaintiff on the basis of the inaccurate information.

5

Another comment in *Spokeo* about the difference between a bare procedural violation and a concrete injury is the Court's discussion of cases recognizing that a plaintiff suffers a concrete injury when the defendant denies him information to which he is statutorily entitled to receive. *See id.* at 1549–50 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) and *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). The Court in *Spokeo* seemed to confirm that the "inability to obtain information" is concrete harm in and of itself. *See Akins*, 524 U.S. at 21 (stating that "inability to obtain information" is an injury in fact); *Public Citizen*, 491 U.S. at 449 (recognizing that seeking and being denied specific agency records qualifies as an injury in fact).

In the present case, the plaintiff contends that his injury is concrete because it involves both an "invasion of privacy" and "informational injury," Br. in Opp. at 7, ECF No. 34, which are forms of harm that have been traditionally recognized as providing a basis for a lawsuit, and which are harms that Congress sought to protect against in enacting § 1681b(b)(2)(A), the provision of the FCRA at issue in this case. I agree that this provision is intended to protect a consumer from an injury similar to invasion of privacy, and to provide the consumer with certain information. The obvious purpose of the provision is to protect a consumer's privacy by preventing an employer or a potential employer from procuring a consumer report containing the consumer's sensitive information without first obtaining the consumer's consent. Indeed, the Senate Committee on Banking, Housing, and Urban Affairs described the purpose of this provision as being to prevent "an improper invasion of privacy." S. Rep. No. 104-185, at

35 (1995).[2] Moreover, the obvious purpose of requiring the employer or potential employer to make a clear and conspicuous disclosure to the consumer in a stand-alone document before obtaining his or her written authorization is to ensure that the consumer knows what he or she is consenting to. In short, the purpose of § 1681b(b)(2)(A) is to prevent an invasion of a consumer's privacy by requiring that a person wishing to obtain a consumer report about the consumer for employment purposes first obtain the consumer's informed consent.

However, not all violations of § 1681b(b)(2)(A) will result in an invasion of the consumer's privacy or a deprivation of information. That is because a person may violate this provision even if the person obtained the consumer's credit report for employment purposes after obtaining the consumer's informed consent. A person may do this by providing the consumer with a disclosure that does not strictly comply with clause (i) of the provision but nonetheless results in the consumer understanding that if he signs the authorization the person may obtain a consumer report about him for employment purposes. For example, assume that an employer provides the consumer with a disclosure that states that the employer may obtain a consumer report about the consumer for employment purposes, but the disclosure appears in a multi-page

---

[2] Congress added the provision codified at § 1681b(b)(2)(A) to the FCRA as part of the Consumer Credit Reporting Reform Act of 1996, which appears in Title II of the Omnibus Consolidated Appropriations Act of 1996. See Pub. L. No. 104-208, § 2403, 110 Stat. 3009, 3009-430 to 3009-431 (1996). Title II of the Omnibus Act is itself known as The Economic Growth and Regulatory Paperwork Reduction Act of 1996. See 110 Stat. 3009-394. In 1995, the Senate Committee on Banking, Housing, and Urban Affairs issued a report on a bill known as the Economic Growth and Regulatory Paperwork Reduction Act of 1995. See S. Rep. No. 104-185. This 1995 bill included the amendments to the FCRA that would eventually be passed into law as the Consumer Credit Reporting Reform Act of 1996. Thus, Senate Report 104-185 discusses the intent behind the FCRA provision that would eventually be codified at § 1681b(b)(2)(A).

document that also includes information on other topics. This disclosure would not comply with the requirement that the disclosure be made "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Nonetheless, the consumer might actually read and understand the disclosure and then sign the authorization knowing full well that he is granting consent to the employer to review the personal information about him that appears in his consumer report. If the consumer in fact reads and understands the disclosure and knows what he is authorizing, then the employer's procuring the report could in no sense be considered an invasion of the consumer's privacy. Likewise, the consumer could not be thought to have been deprived of any information to which he was entitled because, in fact, the consumer obtained the statutorily required information, *i.e.*, the knowledge that the employer was likely to obtain a consumer report about him for employment purposes. This is true even though the employer did not present the information to the consumer in the required form. In short, if the employer makes the disclosure to the consumer, albeit in an improper form, and the consumer reads and understands the disclosure and then authorizes the employer to obtain the consumer report, the consumer will not suffer either an invasion of privacy or an informational injury when the employer procures the consumer report. Under these circumstances, no harm that Congress intended to prevent by enacting § 1681b(b)(2)(A) will have come to pass.

    The plaintiff argues that the question of whether he may have understood the defendant's disclosure is irrelevant for standing purposes. In support of this argument, he cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in which the Supreme Court held that a housing-discrimination "tester" had standing to sue for a violation of a provision of the Fair Housing Act making it unlawful for an individual or firm covered by

8

the Act "[t]o represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." *Id.* at 373 (citing 42 U.S.C. § 3604(d)). The tester, a black woman, approached the defendant and asked about the availability of apartments at the defendant's properties. The tester alleged that the defendant told her no apartments were available. However, another tester, who was a white man, made the same inquiries at about the same time and was told that apartments were available. The black tester then filed suit against the defendant, alleging that the defendant provided her with false information about the availability of housing because of her race. The defendant argued that, because the tester never intended to rent an apartment at any of the properties she asked about, the defendant's providing her with false information about the availability of housing at those properties did not cause her an injury in fact. The Supreme Court rejected this argument. It noted that Congress, in enacting the Fair Housing Act, "conferred on all 'persons' a legal right to truthful information about available housing." *Id.* It held that the invasion of this legally protected right was itself an injury in fact that conferred standing to sue, even if the person expected to receive false information and had no intention of renting an apartment if one was available. *Id.* at 373–74. The Court wrote that "[a] tester who has been the object of a misrepresentation made unlawful under [the Fair Housing Act] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id.*

In the present case, the plaintiff contends that, just as the tester in *Havens Realty* did not have to actually be misled in order to sustain an injury in fact, neither does he have to actually have misunderstood the defendant's disclosure in order to have

9

sustained a concrete injury. The plaintiff contends that just as the Fair Housing Act confers on all persons a right to truthful information about available housing, the FCRA confers on all persons a right to receive a disclosure in a certain form. However, the Fair Housing Act does not actually provide all persons with a right to receive truthful information about available housing; rather, it provides all persons a right not to be denied truthful information about available housing *because of their race or another protected characteristic*. *Id.* at 373. Thus, the statute in *Havens Realty* protected a person from the stigma associated with becoming a victim of racial discrimination or other forms of prohibited discrimination. And the Court has recognized that "the stigmatizing injury often caused by racial discrimination" is itself an injury in fact that confers standing. *Allen v. Wright*, 468 U.S. 737, 755 (1984). In *Havens Realty*, the tester plaintiff experienced the stigma of discrimination when she was denied truthful information about available housing because of her race, even if she did not intend to rent an apartment. Here, the plaintiff does not allege that he was treated differently because of his membership in a protected class, and therefore he has not suffered a stigmatic injury.

It is true that the Court did not mention stigmatic injury in *Havens Realty*, and thus the case could be understood as finding an injury in fact on the basis of an "informational injury," *i.e.*, the mere fact that the plaintiff was denied information to which she was entitled by law. So understood, the case would fall into the same category as the cases involving informational injury mentioned in *Spokeo*, *i.e., Akins* and *Public Citizen*. However, as I have already indicated, in the present case the plaintiff does not allege that he was denied any information to which he was statutorily entitled. Rather, the plaintiff alleges that he received that information (a disclosure stating that the

10

defendant would procure a consumer report about him for employment purposes, *see* Compl. Ex. 1) but that the defendant did not present the information to him in the prescribed manner. Nothing in *Havens Realty*, *Akins*, or *Public Citizen* suggests that receiving information in an improper form automatically qualifies as an injury in fact.

The plaintiff cites one appellate case in which a court found that the plaintiff had suffered an injury in fact simply because the defendant did not provide him with information in the required form. In *Charvat v. Mutual First Federal Credit Union*, the plaintiff filed suit against the defendant for violations of a provision of the Electronic Funds Transfer Act that required ATM operators to provide two forms of notice during a transaction if the operator charged a transaction fee. 725 F.3d 819, 821 (8th Cir. 2013). One of the notices had to be on the ATM, and the other had to appear on the ATM screen during the transaction. *Id.* The plaintiff alleged that, at the time of his transaction, he received the on-screen notice but did not receive the on-machine notice. He then filed suit based on the failure to receive the on-machine notice. He did not allege that the lack of an on-machine notice affected his understanding of whether he would be charged a transaction fee, and he did not allege that the lack of notice caused him any other harm. Nonetheless, the Eighth Circuit concluded that the plaintiff had suffered an injury in fact. *Id.* at 823.

Although *Charvat* supports the plaintiff's argument that his failure to receive the FCRA notice in a stand-alone disclosure automatically qualifies as an injury in fact, *Charvat* was decided before the Supreme Court decided *Spokeo*, and the Eighth Circuit has since held that *Spokeo* "superseded" the holding of *Charvat*. *See Braitberg v. Charter Commc'ns, Inc.*, __ F.3d __, 2016 WL 4698283, at *4 (8th Cir. 2016). Thus, *Charvat* is no longer good law on this point, and it is not instructive as to whether the

11

failure to provide a plaintiff with information in the statutorily prescribed form is itself an injury in fact.

The plaintiff also seems to contend that he suffered a concrete injury because the defendant's failure to provide him with the disclosure on a stand-alone document subjected him to the risk that he would misunderstand the disclosure or otherwise fail to appreciate that he was authorizing the defendant to obtain a consumer report about him. *See* Br. in Opp. at 15 ("By failing to comply with [the stand-alone disclosure] requirement, Defendant caused exactly the risk of harm 'Congress has identified' in the statute."). This argument appears to be based on *Spokeo*'s recognition that "the risk of real harm" may satisfy the requirement of concreteness. *Spokeo*, 136 S. Ct. at 1549. However, as I discussed above, the risk that the Court referred to in *Spokeo* was the risk that the defendant's conduct either had caused or would cause the plaintiff to suffer some form of other harm, which the plaintiff will not be able to identify or measure at the time of filing suit. Thus, if a defendant disseminates inaccurate but potentially harmful information about the plaintiff, such as that he is a convicted sex offender, the defendant has subjected the plaintiff to an ongoing risk that some third party will obtain that incorrect information and use it against him. But at the time of filing suit, the information may not yet have been used against the plaintiff, or if it has the plaintiff might not yet have felt the consequences. For this reason, the dissemination of the information itself qualifies as a concrete injury.

What the plaintiff here seems to be arguing is that a plaintiff suffers a concrete injury whenever the defendant subjects the plaintiff to conduct that entails a risk of harming him, even if by the time the plaintiff files suit he knows that, in fact, the defendant's conduct did not harm him. That is, the plaintiff seems to argue that

12

because there was a risk that he might have misunderstood the defendant's inadequate disclosure, he suffered a concrete injury regardless of whether, in fact, he fully understood the disclosure. But this is not what the Court in *Spokeo* meant by a "risk of real harm." Rather, as discussed, the Court was referring to a risk that the plaintiff has suffered or would suffer real harm that is "difficult to prove or measure." 136 S. Ct. at 1549. Here, the plaintiff knows whether or not the inadequate disclosure caused him harm: either he read and understood the disclosure, or he did not. If he read and understood the disclsoure, then he was not injured.

The above approach to identifying a concrete injury is consistent with the Seventh Circuit's decision in *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014), which was decided before the Supreme Court decided *Spokeo*. In *Sterk*, the plaintiffs alleged that Redbox violated the Video Privacy Protection Act by disclosing their movie-rental histories to third parties. *Id.* at 620–21. Redbox argued that because the plaintiffs had not alleged that they suffered any harm apart from the disclosure itself, they had not alleged an injury in fact. However, the Seventh Circuit held that the disclosure of the plaintiffs' rental histories was itself an injury in fact. *Id.* at 623. This holding is consistent with *Spokeo*. That is because the disclosure of the plaintiffs' rental histories involved an invasion of privacy, which is a type of concrete harm in and of itself, as it entails a risk of real harm similar to the sex-offender example above. Thus, the plaintiffs in *Sterk* alleged more than a "bare procedural violation."

Finally, I emphasize that my decision in this case does not mean that a violation of § 1681b(b)(2)(A)(i) can never result in a concrete injury. To the contrary, if a plaintiff receives a disclosure that does not comply with the stand-alone document requirement and does not understand that by signing the defendant's form he is authorizing the

13

defendant to procure a consumer report about him for employment purposes, that plaintiff will suffer a concrete injury when the defendant procures the report, namely, an invasion of privacy. Thus, to allege an injury in fact, a plaintiff need only allege that he did not understand that by signing the form he was authorizing the defendant to procure the report about him for employment purposes. However, in the present case, the plaintiff has not alleged this, and therefore his complaint must be dismissed for lack of standing.

The plaintiff has not requested leave to amend his complaint. However, because it is possible that the plaintiff could in good faith allege that he did not understand that by signing DSW's disclosure form he was authorizing DSW to obtain a consumer report about him for employment purposes, I will grant him leave to file an amended complaint within 21 days. If the plaintiff does not file an amended complaint within 21 days, I will enter final judgment dismissing this case for lack of standing. Because I am dismissing the original complaint for lack of standing, I will deny as moot the defendant's motion to dismiss that complaint for failure to state a claim upon which relief can be granted.

## III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion to dismiss the complaint for lack of standing (ECF No. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted (ECF No. 23) is **DENIED** as **MOOT**.

**FINALLY, IT IS ORDERED** that the plaintiff is granted leave to file an amended complaint within **21 days** of the date of this order. If the plaintiff does not file an

14

Case 2:15-cv-01461-LA   Filed 11/03/16   Page 14 of 15   Document 50

amended complaint within that time, I will direct the Clerk of Court to enter final judgment.

Dated at Milwaukee, Wisconsin, this 3rd day of November, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge